904 P.2d 560

**Ronald D. TALBOT, Claimant–Appellant,**

v.

**AMES CONSTRUCTION, Employer, and
Aetna Casualty and Surety Company,
Surety, Defendants–Respondents.**

**No. 20959.**

Supreme Court of Idaho.
Idaho Falls, May 1995 Term.

Sept. 26, 1995.

Dial, Looze & May, Pocatello, for appellant. Gregory C. May, argued.

Lynch, Moore, Baskin & Parker, Boise, for respondents. Thomas P. Baskin III, argued.

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND PROCEDURE

Claimant, Ronald D. Talbot (Talbot), suffered an injury on September 24, 1991 while driving a haul truck for Ames Construction at the Black Pine open pit gold mine. Talbot

filed a worker's compensation claim on September 26, 1991, and on February 8, 1992, he filed an application for a worker's compensation hearing. In his application, Talbot claimed that he was injured while "driving a truck when [the] vehicle was struck by [the] loader causing a whiplash resulting in injury to scrotum." Ames Construction and its surety Aetna Casualty and Surety Co. (collectively referred to as Ames Construction) denied that any benefits were due because Talbot did not suffer an "accident" and that Talbot's condition was not caused by the alleged accident which arose out of and in the course of employment.

Talbot was diagnosed as having acute epididymitis in both testicles, which later subsided in the left testicle. Epididymitis is an inflammation of the structure that curves around the testicle which accepts the sperm from the testicle and transports it to the vas deferens. Talbot was later diagnosed as having a hydrocele and a painful testis. A hydrocele is an entrapment of the fluid around the testicle.

On April 7, 1993, a hearing was held before referee, Robert C. Youngstrom. After the hearing, the record remained open for the parties to file post-hearing briefs and depositions. The parties submitted the post-hearing briefs, and the depositions were admitted into evidence. The referee issued its findings of fact, conclusions of law, and proposed order on September 14, 1993, and on September 28, 1993, the Industrial Commission issued its order adopting the referee's findings, conclusions, and proposed order. Although some of the depositions were not taken until after the hearing, the referee and the Commission considered all of the evidence and testimony in rendering their decisions.

The Commission, in its decision, addressed the issues of whether Talbot suffered an accident and injury on September 24, 1991, whether Talbot's condition was causally related to the alleged accident and injury, and whether Talbot was entitled to medical benefits, income benefits, and attorney fees.

The Commission concluded that Talbot failed to sustain his burden of establishing through persuasive medical evidence that his condition was causally related to the September 24, 1991 incident. Conflicting testimony as to the cause of Talbot's condition was presented to the Commission. However, after weighing the evidence presented, the Commission found most credible the opinions of Drs. Larsen, Celano, and Eskelson, who did not believe the sequence of events was a probable cause of Talbot's condition. In determining whether Talbot was subjected to repetitive trauma that aggravated Talbot's condition, the Commission determined that the record did not establish that Talbot was subjected to repeated traumatic incidents of bouncing and jarring which could have aggravated Talbot's condition. In coming to this conclusion, the Commission relied upon the testimony of Talbot's co-workers who stated that the trucks at Ames Construction provided an "extremely smooth" ride. The Commission noted the absence of any testimony from Talbot that he was bounced or jarred. The Commission next considered the arguments of Ames Construction that an accident never occurred, against Talbot's arguments to the contrary. The Commission concluded that while some incident did occur, the preponderance of the medical evidence established that the event did not cause an injury nor did it cause or aggravate Talbot's condition. The Commission concluded that Talbot failed to sustain his burden of proving that the condition for which he sought compensation was caused by an accident arising out of and in the course of his employment. The Commission denied worker's compensation benefits to Talbot.

Talbot appeals the decision of the Commission to this Court. There was a dispute between the parties about the documents to be included in the record, but after an objection was filed by Ames Construction, the parties stipulated to the contents of the record, and an order was entered correcting the record as stipulated by the parties.

## II.

### THE DECISION OF THE COMMISSION IS SUPPORTED BY SUBSTANTIAL, COMPETENT EVIDENCE

■ This Court's scope of review in an Industrial Commission case is firmly estab-

lished in the Idaho Constitution, the Idaho Code, and case law. On appeal, this Court's review of a decision from the Industrial Commission is limited to questions of law. Idaho Const. art. V, § 9; *Langley v. Idaho Industrial Special Indemnity Fund,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995). This Court reviews the Commission's findings of fact exclusively to determine whether the findings are supported by substantial, competent evidence. I.C. § 72–732; *Lethrud v. Idaho Industrial Special Indemnity Fund,* 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995); *Roberts v. Kit Mfg. Co.,* 124 Idaho 946, 947, 866 P.2d 969, 970 (1993). The law is well established that this Court does not scrutinize the weight and credibility of the evidence relied upon by the Commission and will only disturb the Commission's findings as to weight and credibility if they are clearly erroneous. *Langley,* 126 Idaho at 784, 890 P.2d at 735; *Challis v. Louisiana–Pac. Corp.,* 126 Idaho 134, 138, 879 P.2d 597, 601 (1994); *Roberts,* 124 Idaho at 947, 866 P.2d at 970; *Ross v. Tupperware Mfg. Co./Premark,* 122 Idaho 641, 643, 837 P.2d 316, 318 (1992); *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 862, 712 P.2d 559, 563 (1985); *Harrison v. Lustra Corp. of Am.,* 84 Idaho 320, 325–26, 372 P.2d 397, 400–01 (1962); *Dyre v. Kloepfer & Cahoon,* 64 Idaho 612, 617, 134 P.2d 610, 612 (1943). "It would be an improper invasion into the fact finding discretion of the Industrial Commission for the court to hold that the Commission must always give greater weight to one party's medical experts over the other." *Soto v. J.R. Simplot,* 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994) (quoting *Poss v. Meeker Mach. Shop,* 109 Idaho 920, 924–25, 712 P.2d 621, 625–26 (1985)).

On appeal, Talbot requests this Court to reconsider the testimony and evidence and to call into question and review the credibility determinations of the Commission. In addition, Talbot asks this Court to reconsider the testimony from one of Talbot's physicians and to engage in a reweighing of the facts, contrary to the long established rule that this Court does not reweigh the findings of the Commission. Talbot essentially invites this Court to depart from the long standing and traditional scope of reviewing a decision from the Industrial Commission, as required by

the Constitution, statutes, and a long line of case law, and review *de novo* the findings and credibility determinations of the Commission. No argument is made by Talbot that the Commission's findings are not supported by substantial, competent evidence in the record. In fact, at oral argument before this Court, the attorney for Talbot admitted without exception that the record contains substantial, competent evidence to support the Commission's findings. Additionally, no argument was made that the Commission's findings are clearly erroneous, that the conclusions are not supported by the findings, or that the Commission committed error as a matter of law. Talbot's single argument on appeal is a plea to this Court to call into question and review anew the findings of the Commission in the hope that this Court might come to a different conclusion than that of the Commission. This Court will not abandon established precedent and may not ignore the express directive of the Idaho Constitution and the Idaho Code. We will review the findings of the Commission on the exclusive basis of determining whether the findings are supported by substantial and competent evidence in the record. *Langley,* 126 Idaho at 784, 890 P.2d at 735; *Roberts,* 124 Idaho at 947, 866 P.2d at 970.

■ From our independent review of the record, we conclude that substantial, competent evidence supports the determination of the Commission. Three of the four physicians who examined Talbot concluded that there was no causal connection between the September 1991 incident and Talbot's condition. The one physician who believed that it was probable that the September 1991 injury was the cause of Talbot's condition was found to be less credible by the Commission. The Commission relied upon the opinions of the three physicians who testified that there was no causal connection between the September 1991 incident and Talbot's condition. We conclude that the record supports by substantial and competent evidence the Commission's determination that Talbot's condition was not caused by a work-related accident.

■ On the issue of whether Talbot suffered repetitive traumatic events which ag-

gravated his condition, the record contains testimony by the project supervisor, the safety supervisor, and a co-worker that the trucks at Ames Construction provided a "smooth ride" with only a slight rocking motion in the truck. We conclude that substantial and competent evidence supports the Commission's determination that Talbot was not subjected to a series of repeated traumatic events that aggravated his condition. Substantial and competent evidence supports the Commission's conclusion that Talbot did not meet his burden of establishing that he suffered from an injury that was caused by an accident arising out of and in the course of his employment.

## III.

### PERSONAL SANCTIONS ARE IMPOSED PERSONALLY AND INDIVIDUALLY ON ATTORNEY FOR TALBOT PURSUANT TO I.A.R. 11, IN THE AMOUNT OF RESPONDENT'S REASONABLE ATTORNEY FEES ON APPEAL

 The Idaho Constitution created the judicial branch of government in Idaho and vested in the judiciary certain powers. Idaho Const. art. 2, § 1; art. 5, § 2; art. 5, § 13. Included in those judicial powers are certain powers which inherently arise from the nature of the judicial system and the necessity of the courts to carry out its judicial functions.

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *United States v. Hudson,* 7 Cranch. 32, 34, 3 L.Ed. 259 (1812); see also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1990) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also *Ex parte Robinson,* 19

Wall. 505, 510 [22 L.Ed. 205]. These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

*Chambers,* 501 U.S. 32 at 43, 111 S.Ct. 2123 at 2132.

It is well established that the Idaho Supreme Court is uniquely empowered with certain inherent powers. The Court has the inherent power to make rules governing the procedure in all of Idaho's courts. *In re: SRBA Case No 39576,* 95.13 ISCR 547, 550 (1995) (upholding the Court's inherent rule-making authority); *State v. Beam,* 121 Idaho 862, 863, 828 P.2d 891, 892 (1992) (holding that the Court has the inherent authority to make rules governing the procedure in Idaho courts). The Court's inherent power to regulate the practice of law also includes the Court's power to regulate and control the admission of new members to the Idaho State Bar and the power to discipline attorneys who appear before the Court. *Rhodes v. Industrial Comm'n,* 125 Idaho 139, 141, 868 P.2d 467, 469 (1993) ("[T]he judicial department of the government is uniquely imbued with the power to regulate the practice of law."); *King v. Department of Employment,* 110 Idaho 312, 314, 715 P.2d 982, 984 (1986) (the regulation of the practice of law is the sole responsibility of this Court); *Kyle v. Beco Corp.,* 109 Idaho 267, 271, 707 P.2d 378, 382 (1985) ("The regulation of the practice of law ... [is the] province[ ] of the judiciary, and ultimately of the Supreme Court, of this State[.]"); *Pichon v. Benjamin,* 108 Idaho 852, 854, 702 P.2d 890, 892 (1985) ("The regulation of the practice of law is an inherent power of the judiciary."); *Idaho State Bar Assoc. v. Idaho Pub. Util.,* 102 Idaho 672, 675, 637 P.2d 1168, 1171 (1981) (setting aside those portions of the Public Utilities Commission's rules of practice and procedure that infringed upon the inherent power of the Court to define and regulate the practice of law and holding that among the constitutionally granted judicial powers is the power to supervise the practice of law); *In re*

*Schmidt,* 100 Idaho 729, 730, 604 P.2d 1208, 1209 (1980) (holding that the Supreme Court possesses jurisdiction to decide petitioner's request for waiver of Rule 103 regulating the admission of petitioner to the Idaho Bar, by way of the Court's inherent power to regulate the practice of law in the State of Idaho); *In re Bowen,* 95 Idaho 334, 335, 508 P.2d 1240, 1241 (1973) ("The responsibility for ordering the suspension or disbarment of an attorney in Idaho ultimately rests with this Court[.]"); *In re Kaufman,* 69 Idaho 297, 315, 206 P.2d 528, 539 (1949) (holding that the process of admitting persons to the bar, fixing standards for admission, and determining whether an applicant meets the requisite standards is a judicial function that is inherent in the courts); *In re Lavin,* 59 Idaho 197, 199, 81 P.2d 727, 727 (1938) ("[T]he admission or exclusion of persons from the practice of law is a judicial power."); *In re Edwards,* 45 Idaho 676, 687–90, 266 P. 665, 668–69 (1928) (striking down portions of a statute that conferred judicial powers upon the board of commissioners of the Idaho State Bar and reserving to the Supreme Court the province of regulation of the practice of law, other than administerial tasks, through prescribing qualifications to those seeking admission to the practice of law.); *Neil v. Public Util. Comm'n,* 32 Idaho 44, 56, 178 P. 271, 275 (1919) (holding that purely judicial, and not legislative or administrative questions, can only be adjudicated in a court invested with judicial powers).

■ Also among the inherent powers of the judicial branch is the authority vested in the courts to protect and maintain the dignity and integrity of the court room and to achieve the orderly and expeditious disposition of cases. *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132 (The courts are vested by their very nature with power to "impose silence, respect, and decorum . . ., and submission to their lawful mandates[ ]" and with the means to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (citing *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1874); *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)); *State v. Currington,* 108 Idaho 539, 539–41, 700 P.2d 942, 942–43 (1985) (holding that courts possess the following inherent powers: the inherent power to hear an appeal from an order made after judgment that affected the substantial rights of defendant, the inherent power to promulgate procedural rules, and the inherent power to fix bail which is grounded in the power to hold a defendant.); *see also State ex rel. Evans v. Click,* 102 Idaho 443, 450, 631 P.2d 614, 621 (1981) (holding that courts possess the inherent power to insure compliance with the intent of statutes and with the court's orders.) *cert. denied sub nom. Click v. Idaho,* 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982); *St. John v. O'Reilly,* 80 Idaho 429, 434, 333 P.2d 467, 470 (1958) (holding that where objections, motions, or other causes continue to be pending after the expiration of the term of the court, the court has the inherent power to complete and conclude such business at the succeeding term.).

Of particular relevance to the present case, is the power of the courts to sanction those who appear before it. *Riggins v. Smith,* 126 Idaho 1017, 1022, 895 P.2d 1210, 1215 (1995) (upholding the district court's *sua sponte* imposition of sanctions against attorney, pursuant to I.R.C.P. 11(a)(1)); *Loughmiller v. Interstate Farmlines, Inc.,* 107 Idaho 179, 179–80, 687 P.2d 569, 569–70 (1984) (imposing sanctions for delay in payment of benefits to claimant).

This Court adopted rules to provide guidance to the courts in the exercise of these inherent powers. Idaho Appellate Rule 11.1 provides:

**Rule 11.1 Signing of notice of appeals, petitions, motions, briefs and other papers; sanctions.**

Every notice of appeal, petition, motion, brief and other document of a party represented by an attorney shall be signed by at least one (1) licensed attorney of record of the state of Idaho, in the attorney's individual name, whose address shall be stated before the same may be filed. A party who is not represented by an attorney shall sign the notice of appeal, petition, motion, brief or other document and state the party's address. The signature of an attorney or party constitutes a certificate

that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

Under I.A.R. 11.1 this Court shall impose sanctions upon an attorney who signs a notice of appeal, petition, motion, or brief that is not well grounded in fact, warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or is interposed for any improper purpose. I.A.R. 11.1; *Ross v. Tupperware Mfg. Co./Premark,* 122 Idaho 641, 643, 837 P.2d 316, 318 (1992); *see also Chambers v. NAS-CO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than the inherent power. But if in the informed discretion of the court, neither the statue nor the rules are up to the task, the court may safely rely on its inherent power.")

■ Pursuant to I.A.R. 11.1, this Court imposes sanctions on the attorney for Talbot, Gregory C. May, personally and individually, in a sum equal to reasonable attorney fees incurred by respondent on appeal. The attorney for Talbot, Mr. Gregory C. May, admitted during oral argument before this Court, that substantial and competent evidence in the record supports the Commission's finding that the preponderance of the medical evidence established that the September 1991 incident did not cause an injury nor did it cause or aggravate the condition for which Talbot seeks worker's compensation. Mr. May acknowledged that Dr. Larsen and Dr. Norman offered differing and conflicting testimony as to the causal relationship between Talbot's condition and the September 1991 incident, and admitted that each presented sufficient evidence to support a finding by the Commission. In making these admissions to this Court, with no other assertion, argument, or claim for relief, Mr. May conceded without reservation or exception that he had no basis for the appeal.

In addition to Mr. May's acknowledgement that the record supported the findings of the Commission, Mr. May's sole argument on appeal was an attempt to have this Court try the case anew. Mr. May requested this Court to reexamine the findings of the Commission and to reweigh the evidence and credibility determinations of the Commission, which this Court may not do as prescribed by the Constitution, statute, and established precedent. Idaho Const. art. V, § 9; *Langley v. Idaho Industrial Special Indemnity Fund,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995); *Challis v. Louisiana–Pac. Corp.,* 126 Idaho 134, 138, 879 P.2d 597, 601; *Davaz v. Priest River Glass Co.,* 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994); *Roberts v. Kit Mfg. Co.,* 124 Idaho 946, 947, 866 P.2d 969, 970 (1993).

We agree with Ames Construction's argument that the attorney for Talbot, Gregory C. May, acted in bad faith in bringing this appeal. There was no good-faith argument by this attorney for an extension or modification of existing law. There was no basis in fact for this appeal due to this attorney's admission that substantial, competent evidence supported the Commission's findings. There were no legal arguments presented to this Court as a basis for an appeal of this case. Mr. May had no basis for this appeal, wasted judicial resources, and acted in bad faith in pursuit of this appeal. We conclude that the imposition of personal sanctions against Gregory C. May pursuant to I.A.R. 11.1 are warranted.

## IV.

### CONCLUSION

This Court affirms the Commission's decision denying worker's compensation benefits to Talbot. This Court, pursuant to I.A.R. 11.1, imposes sanctions on the attorney for Talbot, Gregory C. May, personally and individually, in a sum equal to Ames Construction's reasonable attorney fees incurred on appeal, to be paid to Ames Construction. Talbot's request for attorney fees under I.C. § 72–804 is denied.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.