# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34854-2007

| | | |
|---|---|---|
| BARRY BRADFORD, | ) | |
| | ) | **Boise, May 2009 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2009 Opinion No. 88** |
| v. | ) | |
| | ) | **Filed: July 7, 2009** |
| ROCHE MOVING & STORAGE, INC., | ) | |
| Employer, and LIBERTY NORTHWEST | ) | **Stephen W. Kenyon, Clerk** |
| INSURANCE CORPORATION, Surety, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FRONTIER MOVING AND STORAGE, | ) | |
| Employer, and STATE INSURANCE FUND, | ) | |
| Surety, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Curtis & Browning, P.A., Idaho Falls, for appellant. Paul T. Curtis argued.

Harmon, Whittier & Day, Boise, for respondents Roche Moving & Storage, Inc., and Liberty Northwest Insurance Corporation. Kent W. Day argued.

Anderson, Nelson, Hall, Smith, Idaho Falls, for respondents Frontier Moving and Storage and State Insurance Fund. Scott R. Hall argued.

---

EISMANN, Chief Justice.

This is an appeal from a finding that the claimant was not an employee of either alleged employer. The claimant had arrived at the warehouse that had been owned by his former employer where he was to work for an out-of-town truck driver in unloading a truck. The former employer's business had been recently purchased, and claimant saw two employees of the new owner attempting to raise a stuck warehouse door. Claimant went over to help them, and was accidentally severely injured. We affirm the findings of the Industrial Commission that the

claimant was not an employee of either his former employer or the new owner at the time of the accident.

## I. FACTS AND PROCEDURAL HISTORY

Roche Moving & Storage, Inc., (Employer 1) was a moving and storage company located in Idaho Falls. It packed and stored household and commercial goods in its warehouse, received goods into storage, and delivered goods it was holding in storage. Barry Bradford (Claimant) worked for Employer 1 in the 1990's and then again during most of 2005 and into January 2006. During this latter period, Employer 1 had ten employees. The owner and his secretary were full-time salaried employees, and the remaining employees, including Claimant, were considered to be regular hourly employees. The regular hourly employees were paid a minimum of four hours per day and additional sums if they worked more than four hours. They were expected to report to work each morning Monday through Friday during the busy moving season and to be available to work during the remainder of the year. They accrued vacation time, and Employer 1 withheld taxes from their earnings.

Employer 1 also hired day laborers during busy times as needed. The day laborers did not accrue vacation time, and Employer 1 did not withhold taxes from what it paid them. Employer 1 also maintained a list of persons willing to work as lumpers for out-of-town truck drivers. They were paid cash by the truck driver to load and/or unload the truck. On very rare occasions, Employer 1 paid the lumper if the truck driver was out of cash, and the truck driver's company then reimbursed Employer 1. Employer 1 did not consider lumpers to be its employees because they worked for, were directed by, and received payment from the out-of-town truck drivers.

During 2005, Employer 1's owner was diagnosed with cancer and underwent multiple treatments. His illness forced him to curtail his business activities. As a result, Claimant and a number of others were terminated as regular employees. In February 2006, Claimant began working for another moving and storage company. In late spring, Claimant was placed on Employer 1's lumper list at his request, and thereafter he was called periodically to work for out-of-town truck drivers. In June and July 2006, Claimant also worked approximately 150 hours for Employer 1 as a day laborer.

On occasion, lumpers who were waiting for a truck to arrive helped Employer 1's regular employees with warehouse duties. This assistance was typically for a few minutes and was provided voluntarily and gratuitously. Employer 1 did not pay them, nor did it require them to provide such assistance in order to be called in as a lumper. When Claimant came in as a lumper, he usually assisted Employer 1's regular employees for a few minutes while waiting for the truck to arrive, but he did not expect or request payment for doing so.

In the summer of 2006, Employer 1 began negotiating to sell its assets to Frontier Moving and Storage (Employer 2). They drafted a purchase and sale agreement with an effective date of August 1, 2006. The secretary who worked for Employer 1 was hired by Employer 2 to continue working in that role. Employer 2 also hired some of Employer 1's other employees, but not Claimant.

On August 3 and 4, 2006, the secretary called Claimant to come in as an hourly worker. Employer 1 paid Claimant for that work, and then Employer 2 reimbursed Employer 1. On August 7, 2006, Employer 2's manager arrived at the warehouse and began managing Employer 2's business operations.

On August 8, 2006, the secretary called Claimant to work as a lumper for an out-of-town truck driver. He was to meet the truck driver at 8:00 a.m. the next day at the warehouse parking lot and help him unload the truck.

On August 9, 2006, Employer 1's manager arrived at the warehouse and attempted to raise the main warehouse door. The door was about fourteen feet high; was comprised of multiple, hinged wooden panels; and was spring loaded. The sides of the door had rollers that ran in vertical steel tracks. The rollers would occasionally stick due to weld spots in the tracks. When that occurred, the employees would try to force it open, including by using a crowbar. As the manager attempted to open the door, it jammed after raising about five feet. The manager and an employee unsuccessfully attempted to raise the door with a crowbar.

Claimant arrived shortly before 8:00 a.m. and met the truck driver for whom he was to work as a lumper. Claimant was wearing an Allied Van Lines shirt, which Employer 1 required both lumpers and its employees to wear. While the truck driver and Claimant were waiting for a second lumper to arrive, Claimant noticed the manager and employee struggling to open the warehouse door. Claimant was familiar with how to free the door's rollers from the times he helped open it while working for Employer 1, and he asked the truck driver if he could help raise

the door. The driver consented. The driver's load was not for delivery to the warehouse and had no connection with either Employer 1's or Employer 2's business. Claimant wanted to free the door in order to make a good impression on Employer 2's manager in the hope of being hired by Employer 2.

Claimant walked over to where the manager and employee were struggling to free the door. Claimant testified that he asked the employee if he needed a hand, and the employee answered in the affirmative. The employee testified that he asked Claimant to help with the door. It is undisputed that the manager did not ask Claimant to help and that the employee had no authority to hire Claimant to do so.

Claimant saw that one or more of the rollers were displaced from the tracks more than he had previously seen them and that a cable from the door was caught around a ladder affixed to an adjacent wall. After unsuccessfully attempting to help the employee free the door with the crowbar, Claimant climbed the ladder. He then stomped on the door with both feet, dislodging the cable and perhaps freeing the door. The spring-assisted door shot upward, launching Claimant high into the air. When he came down, he landed on the concrete floor, sustaining multiple severe injuries. Only a few minutes elapsed from the time Claimant arrived at the warehouse until he was injured. Claimant was taken by ambulance to the hospital, where his blood alcohol level was measured at 0.197. Claimant had been married on August 7, and had celebrated at his wedding reception on August 8.

On November 16, 2006, Claimant filed a worker's compensation complaint against Employer 1, and on November 30, 2006, he filed a worker's compensation complaint against Employer 2. The two claims were consolidated on January 22, 2007. They were heard by a referee, who issued proposed findings of fact and conclusions of law on November 2, 2007. The referee recommended that the Industrial Commission (Commission) find that Claimant had failed to prove that he was employed by either Employer 1 or Employer 2 at the time of the accident. On November 9, 2007, the Commission adopted the referee's proposed findings and entered an order that Claimant had failed to prove that he was an employee of either Employer 1 or Employer 2. Claimant then timely appealed.

## II. ISSUES ON APPEAL

1. Are the Commission's findings of fact supported by substantial and competent evidence?

4

2. Is any party entitled to an award of attorney fees on appeal?

### III. ANALYSIS

**A. Are the Commission's Findings of Fact Supported by Substantial and Competent Evidence?**

Our standard for reviewing decisions of the Industrial Commission is as follows:

> When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact.

*Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002) (citations omitted).

On appeal, Claimant asks us to reweigh the facts and find that he was an employee of either Employer 1 or Employer 2 at the time of the accident. That is something we cannot do.

The only legal issue raised by Claimant is that the Commission failed to consider the "emergency doctrine." Claimant argues:

> Such a finding also does not consider the long-standing rule regarding emergencies at the work place, sometimes called the "emergency doctrine." Although apparently not addressed to date in case law in Idaho, this well-established doctrine in workers compensation law provides that "the scope of an employee's employment is impliedly extended in an emergency to include the performance of any act designed to save life *or property* in which the employer has an interest.

We need not address this doctrine or whether it would even apply to the facts of this case because Claimant did not raise it below. We will not address issues raised for the first time on appeal. *Horne v. Idaho State Univ.*, 138 Idaho 700, 706, 69 P.3d 120, 126 (2003).

**B. Is any Party Entitled to an Award of Attorney Fees on Appeal?**

Claimant requests an award of attorney fees pursuant to Idaho Code § 72-313. That statute has nothing to do with the awarding of attorney fees.[1]

Both Employers request an award of attorney fees against Claimant's counsel pursuant to Idaho Appellate Rule 11.1. "[T]his Court imposes sanctions pursuant to I.A.R. 11.1 only if the appellant's arguments are 'made in bad faith' or 'interposed for any improper purpose.'" *Rivas v. K.C. Logging*, 134 Idaho 603, 609, 7 P.3d 212, 218 (2000) (quoting I.A.R. 11.1). This appeal certainly was not well grounded in fact and was not warranted by existing law. There was also no good faith argument for extension, modification, or reversal of existing law. "In determining whether sanctions are appropriate under the rule, the Court has declared that a lack of legal or factual grounds for an appeal, alone, is generally not enough to support an award of attorney fees without a showing that the appeal was brought for an improper purpose." *Glaze v. Deffenbaugh*, 144 Idaho 829, 834, 172 P.3d 1104, 1109 (2007). In *Painter v. Potlatch Corp.*, 138 Idaho 309, 315, 63 P.3d 435, 441 (2003), this Court held that although the issues raised on appeal had "dubious factual or legal foundations and none that might in good faith call for change or adjustment in existing law," sanctions under Rule 11.1 would not be awarded where the Court could not conclude that the appeal was interposed for an improper purpose. Although it is a close case, we do not find that Claimant's appeal was brought in bad faith or for an improper purpose. We therefore decline to award sanctions on appeal pursuant to Idaho Appellate Rule 11.1.

Employer 2 also requests attorney fees on appeal pursuant to Idaho Code § 12-121. That statute authorizes the award of attorney fees in "any civil action." It does not apply to worker's compensation cases because they are not civil actions. *Swanson v. Kraft*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989).

---

[1] Idaho Code § 72-313 provides as follows:

Whenever any claim is presented and the claimant's right to compensation is not in issue, but the issue of liability is raised as between an employer and a surety or between two (2) or more employers or sureties, the commission shall order payment of compensation to be made immediately by one or more of such employers or sureties. The commission may order any such employer or surety to deposit the amount of the award or to give such security thereof as may be deemed satisfactory. When the issue is finally resolved, an employer or surety held not liable shall be reimbursed for any such payments by the employer or surety held liable and any deposit or security so made shall be returned.

## IV.  CONCLUSION

We affirm the order of the Industrial Commission.  We award respondents costs on appeal, but not attorney fees.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.