IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35923

| FILADELFO FUNES, | ) | |
| --- | --- | --- |
| | ) | Boise, August 2010 Term |
| Claimant-Appellant, | ) | |
| | ) | 2010 Opinion No. 112 |
| v. | ) | |
| | ) | Filed: November 24, 2010 |
| AARDEMA DAIRY, Employer, and STATE | ) | |
| INSURANCE FUND, Surety, | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendants-Respondents | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Greg J. Fuller, Twin Falls, for appellant.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondents.

### SUBMITTED ON THE BRIEFS

HORTON, Justice

Mr. Filadelfo Funes (Funes) sustained an on-the-job injury in January 2005. Funes argued before the Idaho Industrial Commission (Industrial Commission or Commission) that his injuries resulted in either permanent total disability or a substantial permanent partial disability. The Industrial Commission found that Funes was not totally disabled but had suffered a 25% permanent partial disability. Funes appeals, arguing that the Industrial Commission erred in its calculation or, in the alternative, that the Industrial Commission erred in not finding Funes to be an "odd lot" worker for whom no other employment is regularly available. Aardema Dairy (Aardema), Funes' former employer, and the State Insurance Fund, Aardema's surety, seek attorney fees on appeal under Idaho Appellate Rule 11.2.[1] We affirm, but do not award attorney fees.

---

[1] Aardema Dairy cites to I.A.R. 11.1. The previous I.A.R. 11.1 was renumbered as I.A.R. 11.2 on March 19, 2009, effective July 1, 2009.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Funes was born in Honduras and moved to the United States in the late 1990s. He speaks only Spanish and does not read or write in any language. Before coming to the United States, Funes drove a taxi and truck. In January 2005, while working at Aardema Dairy, Funes picked up a newborn calf and injured his back. Following initial medical care, Funes was referred to Dr. David Verst for ongoing care. On May 2, 2005, Dr. Verst performed lumbar surgery. On May 19, Dr. Verst noted that Funes' neurological exam was normal and that Funes reported only mild back pain. The diminished pain continued through June 27, when Dr. Verst released Funes to return to work with restrictions.

Dr. Verst re-evaluated Funes on July 21, 2005, and Funes claimed that he was unable to return to light duty work. Funes' complaints continued through August 2005, notwithstanding the fact that the pain was not corroborated by any sign of recurrent herniation. On August 23, 2005, Dr. David Christensen conducted an MRI that resulted in Dr. Christensen's diagnosis of right sacroiliitis or right sacroiliac joint (SI) dysfunction. Dr. Christensen felt that Funes could return to light-duty work with weight restrictions. On November 10, 2005, Funes was treated by Dr. Clinton Dillé who noted that Funes' symptoms appeared to be "greatly exaggerated." Despite Funes' continued treatment, his complaints of pain increased. Dr. Verst eventually determined that he had no additional recommendations for treatment and released Funes from his care. Dr. Verst then referred Funes to Dr. K. Cheri Wiggins who treated Funes from March 2006 to February 2007. Dr. Wiggins noted that Funes demonstrated "regionalization and pain behaviors" alongside "symptom magnification." Funes returned to Dr. Verst in March 2007, and Dr. Verst found that Funes' symptoms were greater than indicated by objective MRI findings.

On April 12, 2007, Aardema Dairy and the State Insurance Fund arranged for Funes to be evaluated in an Independent Medical Examination (IME) by a panel including orthopedic surgeon Dr. Joseph Daines, psychiatrist Dr. Eric Holt, and neurologist Dr. Richard Wilson. The IME panel determined that Funes could perform light-to-medium work activities, with lifting limited to 50 pounds occasionally and 25 pounds on a regular basis, with limited bending and stooping. Dr. Verst later responded to a questionnaire stating that he agreed with the IME's conclusions. Funes was also evaluated by neurologist Dr. Michael O'Brien on September 11, 2007. Dr. O'Brien agreed that Funes was medically stable but disagreed with previous partial permanent impairment (PPI) ratings made by Dr. Wiggins (12%) and Dr. Verst (10%). Dr.

2

O'Brien's opinion was that Funes should receive a 20% PPI rating. Dr. Verst testified in a post-hearing deposition that, in his opinion, Funes' neck symptoms were not related to the industrial injury and that he did not see a basis for the 20% PPI rating assigned by Dr. O'Brien.

Before the Industrial Commission, Funes argued that he was medically disabled from returning to any sort of work, that his PPI was at least 10% and as high as 20%, and that his permanent partial disability (PPD) was substantially in excess of PPI. He also argued that he should be reimbursed for a variety of medical costs. The evidence considered by the Industrial Commission included testimony by Funes, exhibits submitted by Funes, exhibits submitted by Aardema Dairy and the post-hearing deposition of Dr. David Verst. The exhibits submitted by Funes included: medical records of St. Benedicts Family Medical Center; medical records and reports of St. Benedicts Family Clinic and Dr. Gary Meyers; reports of Jerome Physical Therapy and Sports Medicine; records of Drs. David Christensen, David Verst, K. Cheri Wiggins, and Michael O'Brien; Funes' 2003 and 2004 tax returns; billings by Dr. Wiggins and pharmaceutical billings for Lyrica;[2] the records of Mr. Greg Taylor of the Industrial Commission's Rehabilitation Division; and Funes' first, second, and third supplemental answers to Aardema's interrogatories and request for production. The exhibits submitted by Aardema included records and reports of Drs. Thomas H. Zepeda, David M. Christensen, David Verst, K. Cheri Wiggins, Clinton Dillé, and Richard Wilson, along with a radiology report from Magic Valley Regional Medical Center and a list of benefits paid.

The Industrial Commission found that Funes was entitled to $1,536.22 in unpaid medical expenses, that Aardema and the State Insurance Fund were not entitled to reimbursement for temporary disability benefits already paid, and that Funes was entitled to attorney fees for the unreasonable denial of payment of medical bills. The Industrial Commission further found that Funes was not permanently disabled "either by the 100% method or as an odd-lot worker" and was entitled to a whole person PPD of 25%. Funes filed a motion for reconsideration of the Industrial Commision's order. The Commission denied that motion on October 21, 2008. Funes now appeals.

---

[2] Dr. Wiggins prescribed Lyrica for pain management.

## II. STANDARD OF REVIEW

The standard of review in cases appealed from the Industrial Commission is strictly circumscribed by statute. Idaho Code § 72-732 provides that this Court may only overturn a decision of the Industrial Commission where:

(1) The commission's findings of fact are not based on any substantial competent evidence;
(2) The commission has acted without jurisdiction or in excess of its powers;
(3) The findings of fact, order or award were procured by fraud;
(4) The findings of fact do not as a matter of law support the order or award.

The standard of review based on I.C. § 72-732 has been articulated by this Court as follows:

When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact.

*Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002) (citations omitted) (quoted in *Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009)). "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Jensen v. City of Pocatello*, 135 Idaho 406, 412, 18 P.3d 211, 217 (2000) (quoting *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999)).

## III. ANALYSIS

**A.    The Industrial Commission's determination that Funes suffered a 25% partial permanent disability is supported by substantial and competent evidence.**

Assessment of disability under Idaho worker's compensation law is calculated according to the following factors. "Permanent impairment" is the "anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation." I.C. § 72-422. A degree of permanent disability is calculated based on the extent to which "the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72-423.

4

"Total and permanent disability may be proven either by showing that the claimant's permanent impairment together with nonmedical factors totals 100% or by showing that the claimant fits within the definition of an odd-lot worker." *Christensen v. S.L. Start & Assoc., Inc.*, 147 Idaho 289, 292, 207 P.3d 1020, 1023 (2009) (citing *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 583-84, 38 P.3d 617, 621-22 (2001)).

Funes makes two arguments disputing the Industrial Commission's finding of a 25% permanent partial disability.[3] First, he argues that the finding of a 25% PPD ignored Dr. Verst's finding that Mr. Funes' "job opportunities are very limited because of his lack of education, inability to speak English and work history focused on labor." Second, Funes argues that despite a finding of "symptom exaggeration" by the Industrial Commission, the Commission otherwise ignored any finding of chronic pain.

We reject Funes' first argument, regarding the Commission's finding regarding Funes' job opportunities. The Commission applied the standard reiterated in *Graybill v. Swift & Co.* of "whether the physical impairment, taken in conjunction with non-medical factors, has reduced the claimant's capacity for gainful activity." 115 Idaho 293, 294, 766 P.2d 763, 764 (1988). This standard incorporates relevant non-medical factors including "the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant . . . ." I.C. § 72-430. The Industrial Commission considered Funes' background and language skills alongside its consideration of the labor market and concluded that Funes suffered a 25% disability. Because there is substantial and competent evidence to support the Commission's finding, Funes' first argument fails.

The second argument, regarding the Commission's non-consideration of the pain factors is slightly more complex. This Court has previously held that "a permanent disability rating need not be greater than the impairment rating if, after consideration of the non-medical factors in I.C. § 72-425, the claimant's 'probable future ability to engage in gainful activity' is accurately reflected by the impairment rating." *Graybill*, 115 Idaho at 294, 766 P.2d at 764. In *Graybill*, the Court noted the Commission's finding that "if an impairment evaluation had been based solely upon a 'discrete physiological deficit,' without considering subjective limitations such as chronic pain, then it would be appropriate to separately consider pain in arriving at the

---

[3] Funes' further argument that he is an odd-lot worker is treated in Section III.B., *infra*.

5

disability evaluation." *Id.* at 295, 766 P.2d at 765. Pain may be considered as a medical factor, a non-medical factor, or both, but it must be considered.

However, Funes is incorrect in contending that the Commission failed to consider Funes' complaints of chronic pain. The Industrial Commission based its evaluation of PPI on Funes' claims of "debilitating chronic pain." The Commission based its decision in part on Dr. Verst's responses to a February 18, 2006 questionnaire, which requested an assessment based on the *AMA Guides to the Evaluation of Permanent Impairment*. The *AMA Guides* include an entire chapter devoted to assessments based on pain. *AMA Guides to the Evaluation of Permanent Impairment* ch. 18 (5th Ed.); see also *Pomerinke v. Excel Trucking Transport, Inc.*, 124 Idaho 301, 307, 859 P.2d 337, 343 (1993) ("[T]he Commission in the present case cited the AMA Guides merely in support of its supposition that the medical panels included pain in their impairment ratings."). Thus, contrary to Funes' claim, there is substantial and competent evidence in the record that Funes' objective pain was considered by the Industrial Commission in its calculation of "a 10% whole person PPI as a result of his occupational injury."

We find that the Industrial Commission used the correct legal standards for determining Funes' PPD, that the Commission did consider Funes' pain in determining the calculation of his impairment, and that the Commission's determination of Funes' PPD was based on substantial and competent evidence.

**B. The Industrial Commission's finding that Funes was not an odd lot worker was supported by substantial and competent evidence.**

Funes further claims that the Industrial Commission erred by rejecting his claim of being an "odd lot" worker. An odd lot employee is someone "who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist [such that he] may well be classified as totally disabled." *Arnold v. Splendid Bakery*, 88 Idaho 455, 463, 401 P.2d 271, 276 (1965); *see also Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 584, 38 P.3d 617, 622 (2001).

"A claimant may establish a prima facie case of odd-lot disability status as a matter of law only if 'the evidence is undisputed and is reasonably susceptible to only one interpretation.' The burden of proving a prima facie case of odd-lot status is on the claimant." *Boley v. State, Indus. Special Indem. Fund*, 130 Idaho 278, 281, 939 P.2d 854, 857 (1997) (quoting *Lethrud v. Indus. Special Indem. Fund*, 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995)). The *Boley* Court went on to note that a determination of the nature or availability of employment is a fact-finding

6

that will not be disturbed on a showing that substantial and competent evidence exists in the record. *Boley*, 130 Idaho at 281, 939 P.2d at 857.

In this case, the Industrial Commission made a finding that alternative employment opportunities existed, citing "driving jobs without loading/unloading requirements and [ ] various types of restaurant work." By concurring with the IME panel's determination that Funes "is able to perform light to medium type work with permanent restrictions," the Commission specifically considered the labor market for someone in Funes' condition. While Funes argues that his pain is a basis for finding him to be an odd lot worker, Funes' pain was taken into consideration by the Commission and the Commission identified types of work that the various physicians involved agreed he could perform. These findings were based upon the substantial and competent evidence necessary to support the Commission's finding. We therefore conclude that the Industrial Commission did not err in finding that Funes is not an odd lot worker.

## C. We deny Aardema's request for attorney fees under I.A.R. 11.2.

Aardema argues that it is entitled to attorney fees under I.A.R. 11.2. Aardema argues that both *Talbot v. Ames Construction*, 127 Idaho 648, 904 P.2d 560 (1995), and *Stolle v. Bennett*, 144 Idaho 44, 156 P.3d 545 (2007), support allowing attorney fees in worker's compensation cases. Particularly, Aardema points to the Court's finding in *Stolle* that "[t]his Court has awarded attorney's fees when the appealing party is simply asking the Court to reweigh the evidence and credibility determinations." 144 Idaho at 51, 156 P.3d at 552. The Court in *Talbot* relied on two factors: first, the admission during oral argument that substantial and competent evidence existed for the Commission's finding. 127 Idaho at 653, 904 P.2d at 565. Second, the Court found "that [Talbot] presented no legal arguments as a basis for his appeal . . . ." *Stolle*, 144 Idaho at 51, 156 P.3d at 552 (describing the findings in *Talbot*). In *Stolle*, these factors were combined with a low dollar amount at issue and extensive argument regarding attorney fees. *Id.*

Idaho Appellate Rule 11.2 "serves to sanction attorneys who violate the certification that they made when signing a notice of appeal" and warrants attorney fees where an appeal "was so far outside the realm of reasonability that it warrants a sanction on the losing attorney." *Fowble v. Snoline Exp., Inc.*, 146 Idaho 70, 77, 190 P.3d 889, 896 (2008). This Court has also noted that even where claims were dubious, "sanctions under Rule 11.1 would not be awarded where the Court could not conclude that the appeal was interposed for an improper purpose." *Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 737, 215 P.3d 453, 457 (2009). We note that this

appeal has been decided on the briefs and that all briefing submitted on Funes' behalf was prepared by an attorney who died during the pendency of this appeal. The purposes underlying the sanctions of I.A.R. 11.2 would not be advanced by imposing a sanction against the deceased. In view of Funes' limited education and illiteracy, we are unable to determine that he bears responsibility for the legal arguments advanced on his behalf. For these reasons, we decline to award attorney fees under I.A.R. 11.2.

## IV. CONCLUSION

We affirm the Industrial Commission's determinations that Funes suffered a 25% PPD and that Funes is not an odd lot worker. We deny Aardema's request for attorney fees. Costs to Respondents.

Chief Justice EISMANN, Justices BURDICK, J. JONES and Justice Pro Tem TROUT **CONCUR**.