# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37622

| | | |
|---|---|---|
| SHANNA R. LOCKER, | ) | |
| | ) | Boise, June 2011 Term |
| Claimant-Appellant, | ) | |
| | ) | 2011 Opinion No. 101 |
| v. | ) | |
| | ) | Filed: November 1, 2011 |
| HOW SOEL, INC., dba LOGAN'S | ) | |
| FOODTOWN, Employer, and IDAHO | ) | Stephen Kenyon, Clerk |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents-Respondents on Appeal. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is affirmed.

Law Offices of Cynthia J. Woolley, PLLC, Ketchum, for appellant. Cynthia J. Woolley argued.

Salladay Law Office, Boise, for respondent How Soel, Inc. dba Logan's Foodtown. G. Lance Salladay argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Labor. Tracey K. Rolfsen argued.

_____

HORTON, Justice.

Shanna Locker (Locker) appeals the Industrial Commission's (Commission) finding that she was insubordinate when she failed to provide a medical release at the request of her employer, Logan's Foodtown. The Commission found that this constituted employment-related misconduct which rendered Locker ineligible for unemployment insurance benefits. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Locker was employed by Logan's Foodtown from July 17, 2008 through June 1, 2009. During her interview for employment, Locker informed assistant manager Brian Cruz (Cruz) that she suffered from multiple sclerosis (MS). Logan's Foodtown hired Locker and employed her in a variety of positions, accommodating Locker's MS-related limitations by scheduling her on

1

days that did not involve moving freight and allowing other employees to do heavy lifting or above-the-head reaching on Locker's behalf.

In April 2009, Locker took a six-week long medical leave in order to undergo and recover from a hysterectomy. She returned to work on June 1, 2009. Locker had expressed interest in becoming the deli manager, and she took up that role upon her return. On Locker's first day back to work, she engaged in a conversation with manager Barb Chandler (Chandler), which she characterized as "girl talk." In that conversation, Locker and Chandler spoke about hysterectomies. Locker told Chandler that the surgery had been more difficult than she had expected, that she "still felt weak," and that being on her feet at work had increased the bleeding she was experiencing after the surgery.

On this first day back to work, after two to three hours performing inventory and freight duties, Locker informed Chandler and Cruz that she could not continue to work. Although Locker later testified that balance problems caused by MS were causing her difficulty at work that day, both Cruz and Chandler testified that Locker did not mention her MS when she told them that she needed to leave work. Locker testified that she did not tell Cruz or Chandler that she was in pain, however, the two managers testified to the contrary. According to Chandler, Locker was crying and in visible pain. Chandler informed Greg Jarolimek (Jarolimek), manager and part owner of Logan's Foodtown, that Locker left work because she had not yet healed from the hysterectomy.

Jarolimek testified that when Locker returned to work two days later, he told her he needed "some information from a doctor that would let me know what limitations she might have . . . . Or if she actually needed more time off, you know, something that would give me something that I could work with, you know, to plan for the next two or three weeks, you know, if she took more time." Jarolimek testified that Locker never provided a medical release as requested,[1] which "made it hard for me to determine what she could or could not do. . . . [If] you bring me the information, I can determine what we can do, what changes we need to make . . . ." According to Jarolimek, he told Locker that "if you gave me something from your doctor, you know, so that we can determine what you can do and what you can't do, you know."

---

[1] According to Locker, a nurse denied her request to obtain a medical release from her surgeon's office. Locker did not inform anyone at Logan's Foodtown of this circumstance.

Later that week, Locker returned to Logan's Foodtown to check the work schedule. She had an impromptu meeting with Cruz, Chandler, and a third manager. There is conflicting evidence in the record regarding the conversation that day. Cruz testified that he told Locker "I was concerned for her safety and her well being and that . . . I needed a safety note from the doctor or a release note and she fired at me and she said are you firing me and I said, no, I'm not firing you, just concerned for your safety and until I get a note there is nothing I can do." Cruz also testified that "I just talked to her about her safety and well being and how I was under the impression of a doctor's note that I needed, so I could tell what she could and could not do." According to Chandler, however, she heard Cruz tell Locker that Locker "needed to be able to do the job details of a deli manager and that he had to let her go, because she cannot do that work entailed in that – in the lifting." Locker testified that she left the meeting with the clear impression that she was no longer employed by Logan's Foodtown. Locker left work and did not return.

Locker filed for unemployment benefits, and the Idaho Department of Labor found her ineligible for benefits because she had quit without cause. Locker appealed. The appeals examiner affirmed the eligibility determination on alternative grounds, finding that Logan's Foodtown had terminated Locker's employment and that Locker had committed misconduct by failing to produce the requested medical release. Locker appealed the issue to the Industrial Commission and asserted, for the first time, claims arising under the Family Medical Leave Act (FMLA). The Commission concluded that Locker's FMLA claims were waived as untimely and for lack of evidence that the Act was applicable, adopted the appeals examiner's findings of fact,[2] and affirmed the appeals examiner's decision denying Locker's request for unemployment benefits. Locker appeals the Commission's order and raises claims arising under the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (IHRA). Locker and the Department of Labor request attorney fees on appeal.

## II. STANDARD OF REVIEW

This Court upholds decisions of the Industrial Commission unless (1) the Commission has acted without jurisdiction or in excess of its powers; (2) the Commission's findings of fact are not based on substantial and competent evidence; (3) the findings of fact, order or award

---

[2] The adopted finding of fact most pertinent to this appeal states that Locker "was advised by [Cruz] that they were concerned for her safety and wellbeing and they needed a medical release. [Cruz] advised [Locker] that he had to let her go as *she had not shown* that she could perform the job duties." (Emphasis added).

3

were procured by fraud; (4) as a matter of law, the findings of fact do not support the order or award. I.C. § 72–732. When this Court reviews a decision of the Industrial Commission, we exercise free review over questions of law. *Funes v. Aardema Dairy*, 150 Idaho 7, ___, 244 P.3d 151, 154 (2010) (citations omitted). However, our review of questions of fact is limited to a determination of whether substantial and competent evidence supports the Commission's findings. *Id*. "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous." *Id*.

### III. ANALYSIS

**A. The Commission's conclusion that Locker was terminated for misconduct is supported by substantial and competent evidence.**

Article V, section 9 of the Idaho Constitution, conferring jurisdiction upon this Court to review orders of the Commission, applies to unemployment compensation cases. *Idaho Mut. Ben. Ass'n v. Robison*, 65 Idaho 793, 800, 154 P.2d 156, 159 (1944). This section provides, in pertinent part: "On appeal from orders of the industrial accident board the court shall be limited to a review of questions of law." *Id.*; Idaho Const. art. V, § 9. Thus, this Court is "constitutionally compelled to defer to the Industrial Commission's findings of fact where supported by substantial and competent evidence." *Teffer v. Twin Falls School Dist. No. 411,* 102 Idaho 439, 439, 631 P.2d 610, 610 (1981).

Locker asserts that she was discharged because MS prevented her from performing the deli manager role and that the Commission's conclusion that she was discharged for committing misconduct is not supported by the record. We are constitutionally constrained to disagree.

An employee is ineligible for unemployment benefits if she was "discharged for misconduct in connection with h[er] employment." I.C. § 72-1366(5). The employer must prove misconduct by a preponderance of the evidence. *Appeals Exam'r of Idaho Dep't of Labor v. J.R. Simplot Co.*, 131 Idaho 318, 320-21, 955 P.2d 1097, 1099-100 (1998). Misconduct may take the form of "wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219

4

(1957). Misconduct does not include "[m]ere inefficiency, unsatisfactory conduct, [or] failure of good performance as the result of inability or incapacity." IDAPA 09.01.30.275.03.

The Commission determined that the standards of behavior test applied to Locker's case. That test requires the employer to prove that (1) the employee's conduct fell below a standard of behavior (2) which the employer subjectively expected of its employee, and (3) that the employer's expectation was objectively reasonable. *Adams v. Aspen Water, Inc.*, 150 Idaho 408, ___, 247 P.3d 635, 640 (2011). In order to be reasonable, an employer's expectation should flow naturally from the employment relationship or be communicated to the employee. *Id.* In the present case, Logan's Foodtown communicated to Locker that it expected her to produce a medical release that would clarify what types of work she was able to perform, as is demonstrated by the testimony of both Cruz and Jarolimek, and therefore the second and third prongs of the test are satisfied. The remaining question, then, is whether Locker's conduct fell below the standard of behavior expected of her.

This Court has recognized insubordination as one form of conduct that violates the standard-of-behavior test. *Avery v. B & B Rental Toilets*, 97 Idaho 611, 614, 549 P.2d 270, 273 (1976). Insubordination is an employee's "deliberate or wilful refusal . . . to obey a reasonable order or directive which an employer is authorized to give and entitled to have obeyed." *Id.* When reviewing claims of insubordination, this Court looks to the facts of each case to determine whether an employee's conduct is reasonable under the circumstances. Thus, an employee's expression of disagreement or discontentment to her employer may not be an act of insubordination. *Folks v. Moscow School Dist. No. 281*, 129 Idaho 833, 838, 933 P.2d 642, 647 (1997) (holding that employee lacked requisite intent where the interaction that led to her discharge was emotionally charged and instigated by stress); *Avery*, 97 Idaho at 615, 549 P.2d at 274 (stating that the law does not require "unswerving docility and servility" of employees, and that "[a] single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct."); *cf. Pimley v. Best Values, Inc.*, 132 Idaho 432, 435, 974 P.2d 78, 81 (1999) (holding that employee's use of vulgar, disrespectful language in presence of retail customers fell below employer's reasonable standard of behavior). Likewise, an employee who informs his employer about circumstances that prevented compliance may protect himself against discharge for misconduct. *Whittier v. Dep't of Health & Welfare*, 137 Idaho 75, 79, 44 P.3d 1130, 1134 (2002). Thus, the applicable law takes the social realities of the workplace into account.

We are unable to conclude, as a matter of law, that an employee has not willfully and deliberately disregarded the employer's order when the employee has both failed to comply with her employer's order and also failed to communicate any justification for her lack of compliance. *Id.* (stating that employee "should have communicated to [his supervisor] the obstacles preventing him from performing her order.").

Thus, although there was a substantial conflict in the evidence presented to the Commission, we consider whether there is substantial evidence in the record which supports the Commission's factual determination that Locker was discharged for insubordination. It is uncontradicted that Locker did not provide a release to Logan's Foodtown. Although Jarolimek and Cruz each informed Locker that she could not return to work until she provided a medical release that "show[ed] that she could perform the job duties," Locker did no more than make a single phone call to request the release. When she was rebuffed by her surgeon's nurse, Locker neither pursued other avenues of obtaining a medical release, nor took the simple step of informing her employer that she was experiencing difficulty in obtaining the release. As was the case in *Whittier*, Locker both failed to comply with her employer's reasonable directive and failed to communicate the circumstances that prevented her compliance.

Additionally, while Locker contends that she lacked the physical capacity to perform the deli manager role because of MS, she did not express that concern to anyone at Logan's Foodtown when her continued employment was conditioned on receipt of a medical release. Rather, the very day Locker returned to work after a six-week long medical leave for a hysterectomy, she discussed difficulties associated with that surgery with a female manager and soon after informed management that she could not continue to work that day. While Logan's Foodtown was aware that Locker suffered from MS, Locker's attempt to obtain the requested medical release from her surgeon indicates that she understood that Cruz and Jarolimek believed that any limitations on her ability to work were related to the surgery. A reasonable person could conclude that if Locker believed her inability to work was MS-related, she would have both informed Logan's Foodtown as such and requested accommodations similar to those she had received in the past. Thus, substantial and competent evidence supports the Commission's conclusion that Locker was not terminated because she lacked the capacity to work, but rather because she failed to provide the medical release that Logan's Foodtown requested in order to

6

determine the types of work she was able to perform. We therefore affirm the decision and order of the Industrial Commission.

**B. Locker waived all claims arising under the ADA and IHRA.**

Locker raised FMLA claims before the Commission, but she raises ADA and IHRA claims for the first time on appeal. "Issues not raised before the Industrial Commission and presented for the first time on appeal will not be considered by this Court." *Creps v. Idaho Dep't of Labor*, 149 Idaho 634, 640, 238 P.3d 1284, 1290 (2010) (citing *Higgins v. Larry Miller Subaru–Mitsubishi,* 145 Idaho 1, 6, 175 P.3d 163, 168 (2007)). Accordingly, we do not address Locker's ADA and IHRA claims.

**C. Under *Smith v. Washington County*, we may not award attorney fees on appeal.**

All parties to this appeal request attorney fees under I.C. § 12–117. However, "I.C. § 12–117(1) does not allow a court to award attorney fees in an appeal from an administrative decision." *Smith v. Washington Cnty.*, 150 Idaho 388, ___, 247 P.3d 615, 618 (2010). Although the Department of Labor and Logan's Foodtown are the prevailing parties, we lack the power to award attorney fees in this case.

## IV. CONCLUSION

We affirm the decision and order of the Industrial Commission finding Locker ineligible for unemployment benefits. Costs, but not attorney fees, to Respondents.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.