# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45555

| | | |
|---|---|---|
| MEGAN D. KELLER, | ) | |
| | ) | |
| Claimant-Respondent, | ) | Boise, November 2018 Term |
| | ) | |
| v. | ) | Opinion filed: February 8, 2019 |
| | ) | |
| AMERITEL INNS, INC., dba HAMPTON INN AND SUITES, | ) ) | Karel A. Lehrman, Clerk |
| | ) | |
| Employer-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IDAHO DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondent. | ) | |

Appeal from the Idaho Industrial Commission.

The order of Idaho Industrial Commission is <u>affirmed.</u>

Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, for Appellant. Corey J. Rippee argued.

Lovotti & Grad, PLLC, Boise, for Respondent, Megan Keller. Alexander K. Grad argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent, Idaho Department of Labor. Douglas A. Werth argued.

_____

HORTON, Justice.

AmeriTel Inns, Inc. (AmeriTel) appeals from a decision of the Idaho Industrial Commission (Commission) granting Megan Keller (Keller) unemployment benefits after her employment with AmeriTel ended in June 2017. AmeriTel asks this Court to adopt a bright line rule that a one-day absence without notice is a voluntary quit under Idaho Code section 72-1366(5). In the event that the Court declines to do so, AmeriTel contends that the Commission's

1

factual findings that rendered Keller eligible for unemployment compensation benefits were not supported by substantial and competent evidence. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Keller's claim for unemployment benefits following the termination of her employment with AmeriTel in June 2017. Keller began working as a housekeeper for AmeriTel in April 2016. In early 2017, she began to experience extreme nausea and dehydration as a result of pregnancy. Because of these symptoms, Keller frequently missed shifts or reported late to work in the weeks leading up to the termination of her employment.

AmeriTel has a policy that allows for discipline of employees for excessive absences or failure to provide adequate advance notice of tardiness or absence. Although AmeriTel's policy does not define "excessive absences," toward the end of May 2017, Keller's superiors at AmeriTel began to feel that her absences were excessive. As a result, her supervisor, Cody Black, was instructed to present her with a formal write-up when she came in to work on June 2. However, Keller did not report to work that day because she was ill. Black did not reprimand Keller. Instead, he called her that evening and offered to place her on a leave of absence until she was well enough to return to work. Keller agreed to the leave of absence and asked if they could meet the following day when she was at work to discuss further details. However, because Keller did not feel well on June 3, she sent a text message to Black to inform him that she was unable to meet with him that day.

Keller was scheduled to work on June 4 but again she did not feel well. She drafted a text message to Black to notify him that she would be absent; however, the message was never received. Until that day, Keller had always notified AmeriTel if she was going to be absent from work. On June 5, Keller sent a text message to Black to ask if he was available to meet that day to discuss her leave of absence. After receiving Keller's message, Black spoke with AmeriTel's general manager about Keller's absence the previous day. At the general manager's direction, Black informed Keller that because she did not provide notice of her absence on June 4, AmeriTel presumed that she had quit.

Keller applied for unemployment compensation benefits. Her application was initially denied on the basis that she was discharged for employment-related misconduct. Keller appealed that decision and an appeals examiner conducted a hearing to review her eligibility on August 8, 2017. Following the hearing, the appeals examiner issued a decision concluding that Keller was

eligible for unemployment benefits because she was discharged and her discharge was not for employment-related misconduct. In August 2017, AmeriTel appealed from that decision. On October 2, 2017, the Commission issued an order affirming the appeals examiner's decision. AmeriTel timely appealed.

## II.    STANDARD OF REVIEW

The Idaho Constitution constrains this Court's review of Industrial Commission decisions to questions of law. *Locker v. How Soel, Inc.*, 151 Idaho 696, 699, 263 P.3d 750, 753 (2011) (citing Idaho Const. art. V, § 9). Accordingly, "this Court does not 'conduct a *de novo* review of the evidence or consider whether it would have reached a different conclusion from the evidence presented.' " *Serrano v. Four Seasons Framing*, 157 Idaho 309, 317, 336 P.3d 242, 250 (2014) (quoting *Henderson v. McCain Foods, Inc.*, 142 Idaho 559, 565, 130 P.3d 1097, 1103 (2006)). Instead, where substantial and competent evidence supports the Commission's factual findings, we are constitutionally compelled to affirm the Commission's decision. *Barr v. Citicorp Credit Serv., Inc. USA*, 161 Idaho 136, 138, 384 P.3d 383, 385 (2016). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "[W]hether the claimant was discharged or voluntarily left her employment, whether a discharge was for misconduct, and whether there was good cause for the claimant to voluntarily leave her employment are factual questions for the Commission." *Thrall v. St. Luke's Reg'l Med. Ctr.*, 157 Idaho 944, ___, 342 P.3d 656, 659 (2015) (internal citations omitted).

## III.    ANALYSIS

AmeriTel argues that we should adopt a bright line rule that a one-day absence without notice when an employee has the means and ability to notify an employer is *per se* a voluntary quit under Idaho Code section 72-1366(5). AmeriTel also argues that substantial and competent evidence does not support the Commission's finding that AmeriTel discharged Keller, but that if Keller was discharged, it was for employment-related misconduct because she disregarded and violated AmeriTel's policy regarding notice of an absence. We address these issues in turn.

### A. The determination whether an employee voluntarily quit or was discharged for purposes of Idaho Code section 72-1366(5) is to be determined on a case-by-case basis.

Idaho Code section 72-1366(5) provides that a claimant is eligible for unemployment benefits if "[t]he claimant's unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for

3

misconduct in connection with his employment." AmeriTel asks the Court to adopt a bright line rule that a one-day absence without notice when an employee has the means and ability to notify an employer is *per se* a voluntary quit under Idaho Code section 72-1366(5).

We have previously indicated that whether an employee voluntarily quit or was discharged under Idaho Code section 72-1366(5) is a fact-intensive inquiry to be determined on a case-by-case basis. *See Thrall*, 157 Idaho at 947–48, 342 P.3d at 659–60. Indeed, we have previously rejected an argument similar to AmeriTel's:

> BMC argues that *Doran v. Employment Sec. Agency*, 75 Idaho 94, 97, 267 P.2d 628, 630 (1954), establishes the rule that an employee who temporarily leaves employment without advising his employer of the reason and who fails to seek a leave of absence and keep his employer informed of his intentions and prospects of return is deemed to have quit the employment without good cause. However, *Doran* does not establish a bright line rule to that effect. The test is one of reasonableness under the circumstances.

*Clay v. BMC W. Truss Plant*, 127 Idaho 501, 503, 903 P.2d 90, 92 (1995). Adopting the bright line rule suggested by AmeriTel would transform this factual analysis into a question of law and conflict with precedent where we have declined to impose a similar rule. "[T]he rule of stare decisis dictates that we follow [controlling precedent] unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 459–60, 414 P.3d 1194, 1198–99 (2018) (second alteration in original) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). AmeriTel has not persuaded us that our current approach to the quit/discharge question meets this rigorous standard. Consequently, we decline to adopt AmeriTel's proposed bright line rule.

## B. Substantial and competent evidence supports the Commission's finding that AmeriTel discharged Keller.

AmeriTel argues that Keller voluntarily quit her employment because she "no-called/no-showed" for her shift on June 4. It also argues that the Commission erred by not undertaking a meaningful analysis of whether Keller voluntarily quit and that there is not substantial and competent evidence to support a finding that Keller was discharged. The Commission rather tersely concluded that "the evidence in this case establishes that Employer discharged [Keller]. [Keller] did not quit."

To obtain unemployment benefits, a claimant must not be unemployed "due to the fact that he left his employment voluntarily without good cause connected with his

4

employment, or that he was discharged for misconduct in connection with his employment." I.C. § 72-1366(5). The employee bears the burden of demonstrating by a preponderance of the evidence that she was discharged and did not voluntarily quit. *Thrall*, 157 Idaho at 944, 342 P.3d at 659. Whether an employee voluntarily quit or was discharged is a question of fact for the Commission. *Id.* "This Court will not disturb the Commission's factual findings unless they are clearly erroneous." *Lopez v. State*, 136 Idaho 174, 178, 30 P.3d 952, 956 (2001). "Findings of fact that are supported by substantial and competent evidence are not clearly erroneous . . . ." *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018).

The test for whether an employee was discharged is "whether sufficient words or actions by the employer would logically lead a prudent man to believe his tenure had been terminated." *Thrall*, 157 Idaho at 944, 342 P.3d at 660 (quoting *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 334–35, 563 P.2d 54, 58–59 (1977)). When Keller attempted to contact her supervisor, Black, on June 5 to discuss her leave of absence, he responded that her absence without notice the previous day was "considered a voluntary quit." Keller replied: "I texted you both days before both of my shifts. And we also discussed putting me on leave on Friday but I still texted you before both shifts . . . ." She also testified before the appeals examiner that she was surprised that AmeriTel said she voluntarily quit because she "wasn't really expecting that," as she had never previously been absent without notice. She also testified that during the discussion with Black on June 2, she told him that she was not sure whether she would be able to work on June 4 due to her pregnancy-related illness. We hold that this evidence constitutes substantial and competent evidence supporting the Commission's determination that Keller was discharged. We next consider whether Keller should nonetheless be deemed to have voluntarily quit because she was absent without notice on June 4.

The standard for whether an absence amounts to a voluntary quit is that "good faith on the part of the employee must always appear," and the employee must "act as a reasonably prudent person would in keeping contact with his employer and in securing the permanence of his employment." *Clay*, 127 Idaho at 504, 903 P.2d at 93 (quoting *Doran*, 75 Idaho at 97, 267 P.2d at 630). The Commission found that Keller attempted to notify AmeriTel of her absence on June 4 by text message, "but for whatever reason, the message never transmitted." The Commission also found that Keller tried to meet with her supervisor the following day to discuss her leave of absence, at which time she was told that AmeriTel presumed she had quit. Keller's

reply to her supervisor indicates that she believed she had notified him of her absence on June 4: "I texted you both days before both of my shifts." This evidence supports the Commission's implicit finding that Keller did not intend to quit and that she acted in good faith in attempting to notify AmeriTel of her absence on June 4.

The critical question then is whether Keller acted as a reasonably prudent person in keeping contact with AmeriTel. As we stated in *Clay*, "individual circumstances may vary [the] duties" of an employee who is absent from work. 127 Idaho at 504, 903 P.2d at 93. The Commission found that AmeriTel's policy did not specify the means by which an employee may provide notice of an unscheduled absence and that Black previously accepted notice by text message. Consequently, Keller acted reasonably in attempting to notify Black of her absence on June 4 via text message.

The Commission found that Keller was absent from work various times due to her pregnancy-related illness, including all six shifts that she was scheduled to work in the days leading up to June 4; that June 4 was the first time Keller failed to notify AmeriTel of an absence in over a year of employment; and—most significantly—that two days prior to her absence without notice, Keller agreed to go on a leave of absence during which she would retain her employment until she was well enough to return to work. Tellingly, AmeriTel's witness, Black, provided strong evidence that Keller did not quit. Black testified that when he received Keller's message on June 5 asking to meet to discuss the details of her leave of absence, he spoke with the general manager and was instructed to "text her that since she no call, no showed that she broke policy and that she was done."

We hold that these facts constitute substantial and competent evidence that AmeriTel discharged Keller and that she did not voluntarily quit.

## C. Substantial and competent evidence supports the Commission's findings that Keller was discharged because of her absences and that she was not discharged for employment-related misconduct.

AmeriTel maintains that if Keller was discharged, it was for misconduct because she disregarded and violated its notice policy when she was absent without notice on June 4, 2017. The Commission found that AmeriTel discharged Keller because of her absences and that she was not discharged for misconduct.

Despite AmeriTel's insistence that it did not discharge Keller because of her absences prior to June 4, the Commission explicitly found that "[t]he specific issue in this case is

6

[Keller]'s attendance." It appears that in finding that Keller was discharged for excessive absences, the Commission implicitly concluded that AmeriTel's stated reason for discharging Keller—failure to provide notice of her absence on June 4—was a pretext for firing her for absences resulting from her pregnancy-related illness.

AmeriTel's representatives' testimony support the Commission's finding. AmeriTel's general manager testified that he believed Keller's absences became excessive around the end of May, just before Keller's employment was terminated. He testified that AmeriTel was prepared to formally reprimand Keller on June 2 for her absences but did not do so because she continued to miss work until her employment was terminated. AmeriTel's Vice President of Operations, who represented it before the appeals examiner also stated: "Is it acceptable to have this amount of absences? No, it is not." Black testified that on June 2, Keller agreed to take a leave of absence while retaining her employment with AmeriTel. While the two were to have discussed the details of Keller's leave when she came to work the following day, this conversation did not occur because she missed her next two shifts and her employment was terminated.

We conclude that substantial and competent evidence supports the Commission's finding that AmeriTel discharged Keller for excessive absences and not for her single absence without notice on June 4. In light of this determination, we need not address AmeriTel's claim that Keller was discharged for employment-related misconduct for the "no call, no show" of June 4.[1]

## D. Neither Keller nor the Department is entitled to attorney fees on appeal.

Keller argues that she should be awarded attorney fees under Idaho Appellate Rule 11.2(a) as a sanction against AmeriTel because this appeal was interposed for an improper purpose and it was not founded in fact or law. The Department argues that it should be awarded attorney fees under Idaho Code section 12-117(1) because AmeriTel brought this appeal

---

[1] Even if we were to decide this issue, AmeriTel's claim would fail. The Commission explicitly found that Keller's failure to provide notice on June 4 "was not intentional." This finding was supported by Keller's testimony regarding the failed text message:

> I honestly had -- I honestly had written out the text message and I had thought that I had sent it. So, I don't know if it was -- I was sick, obviously. That's the only reason why I wouldn't have came in, but -- yeah. So, I don't know if it was a user error as in I didn't send it, because I was so sick and I didn't -- I thought I had and I didn't or if it was a technical fau1t.

"This Court does not re-weigh evidence and will not disturb the Commission's conclusions regarding the credibility of evidence unless they are clearly erroneous." *Sparks v. Laura Drake Ins. & Fin. Servs., Inc.*, 164 Idaho 138, 140, 426 P.3d 489, 491 (2018) (citing *Serrano v. Four Seasons Framing*, 157 Idaho 309, 314, 336 P.3d 242, 247 (2014)). Keller's testimony constituted substantial and competent evidence upon which the Commission could reasonably rely in reaching its conclusion that Keller had not willfully violated AmeriTel's notice policy.

frivolously and without a reasonable foundation in fact or law. In light of the Commission's cursory treatment of the quit/discharge issue, we decline to award either Keller or the Department attorney fees on appeal. However, as Keller and the Department are the prevailing parties on appeal, they are entitled to costs as a matter of right. I.A.R. 40.

## IV.    CONCLUSION

We affirm the Commission's order awarding unemployment benefits to Keller. Costs, but not fees, are awarded to Keller and the Department.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**